Melissa Goodwin, Justice
Eric Wayne Donaldson was indicted in Comal County cause number CR2014-499 for five counts of theft of property and one count of fraudulent use or possession of identifying information. Donaldson moved to quash the indictment, arguing that the double jeopardy clauses of the United States Constitution and the Texas Constitution precluded his prosecution. The trial court granted Donaldson's motion to quash in part. The State appeals, contending that the trial court erred in concluding that the prosecution in Comal County is barred by the double jeopardy prohibition against successive prosecutions. For the reasons set out below, we reverse the trial court's order and remand for further proceedings consistent with this opinion.
BACKGROUND
On March 5, 2014, a Hays County grand jury indicted Donaldson in cause number CR-14-0122 for two offenses: credit card abuse committed against an elderly individual, see Tex. Penal Code § 32.31(b), (d), and fraudulent use or possession of identifying information of less than five items *38 committed against an elderly individual, see id. § 32.51(b)(1), (c)(1), (c-1)(1).
On November 5, 2014, a Comal County grand jury indicted Donaldson in cause number CR2014-499 for six offenses: one count of theft of property valuing $1,500 or more but less than $20,000, see id. § 31.03(a), (e)(4)(A),[1] four counts of theft of property valuing less than $1,500 with two prior theft convictions, see id. § 31.03(a), (e)(4)(D), and one count of fraudulent use or possession of identifying information of five or more but less than ten items, see id. § 32.51(b)(1), (c)(2).
Both indictments arose, at least in part, out of the same theft incident that occurred in Comal County where, on or about December 23, 2013, Donaldson stole the purse of Patricia Ross from her shopping cart as she was shopping. The record indicates that Donaldson was subsequently arrested in Hays County when he was caught in the process of stealing another woman's purse. At the time of his arrest for that incident, Donaldson had Ross's identifying information on his person. The State does not dispute that there was only one incident of theft from Patricia Ross-that is, that all of the items stolen from Ross that are the subject of the two indictments at issue were obtained when her purse was stolen in December 2013.
On February 17, 2015, Donaldson pled guilty pursuant to a plea bargain to both counts of the Hays County indictment in cause number CR-14-0122. In accordance with the plea agreement, he was sentenced to seven years in the Texas Department of Justice on each count, with the sentences to run concurrently.
On November 10, 2015, Donaldson filed a motion to quash the Comal County indictment in cause number CR2014-499 in which he asserted violations of the double jeopardy protections afforded by the United States and Texas constitutions. Specifically, as relevant to the trial court's ruling being appealed,[2] he argued that his prosecution for fraudulent use or possession of identifying information in Comal County is barred by his previous conviction in Hays County for fraudulent use or possession of identifying information because the count alleging the offense, Count VI, "is factually the same criminal episode as prosecuted in Hays County." After a hearing, the trial court agreed and quashed Count VI of the indictment, barring the prosecution. In support of its ruling, the trial court issued written Findings of Fact and Conclusions of Law. Relevant to this appeal, the court made the following fact finding:
6. The Hays County case (CR-14-0122) is factually the same offense as *39 the Comal County case (2014-499). The two prosecutions arise out of the same criminal episode. In each indictment the State alleges the same victim and that the crime occurred on the same date.
The court made the following legal conclusions:
8. The gravamen of the offense under Texas Penal Code 32.51 is the act of obtaining, possessing, using, or transferring an item of identifying information with the intent to defraud another. In other words, the gravamen of the offense is a single act of identity theft.
9. Because the gravamen of the offense is the act of identity theft each act of identity theft is an allowable unit of prosecution under the statute.
10. Because both the Hays County and Comal County indictments charge the same act of identity theft, Mr. Donaldson has illegally been charges [sic] twice under the same unit of prosecution. This violates the constitutional protections against double jeopardy under both the Fifth Amendment United States [sic] and Article I, Section 10 of the Texas Constitution.
The State appeals the trial court's ruling, see Tex. Code Crim. Proc. art. 44.01(a)(1) (providing that State may appeal from dismissal of any portion of indictment), contesting these conclusions.
DISCUSSION
In challenging the trial court's order quashing Count VI of the indictment, the State argues that the trial court erred in concluding that the Comal County prosecution for fraudulent use or possession of identifying information violates the double jeopardy prohibition against successive prosecutions because the court erroneously concluded that the Comal County charge was "the same offense" as the Hays County conviction. The State asserts that the trial court erred in concluding that the unit of prosecution under Penal Code section 32.51 is the entire transaction (the "theft of a person's identity") and that Donaldson failed to meet his burden of showing that he is being prosecuted again for the same offense.
Standard of Review
In reviewing a trial court's ruling, an appellate court must first determine the applicable standard of review. Guzman v. State , 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). This determination for assessing a trial court's ruling on a motion to quash turns on which judicial actor is best positioned to determine the issue in controversy. Holton v. State , 487 S.W.3d 600, 608 (Tex. App.-El Paso 2015, no pet.) ; Ribble v. State , No. 02-14-00129-CR, 2015 WL 1407761, at *1 (Tex. App.-Fort Worth Mar. 26, 2015, no pet.) (mem. op., not designated for publication); Sample v. State , 405 S.W.3d 295, 301 (Tex. App.-Fort Worth 2013, pet. ref'd) ; see State v. Moff , 154 S.W.3d 599, 601 (Tex. Crim. App. 2004) ("The amount of deference appellate courts afford a trial court's rulings depends upon which 'judicial actor' is better positioned to decide the issue.") (citing Guzman , 955 S.W.2d at 89 ); State v. Stukes , 490 S.W.3d 571, 574 (Tex. App.-Houston [14th Dist.] 2016, no pet.) (same); State v. Velasquez , 487 S.W.3d 661, 664 (Tex. App.-San Antonio 2016, pet. granted) (same). " 'If the issue involves the credibility of a witness, thereby making the evaluation of that witness' [sic] demeanor important, compelling reasons exist for giving the trial court discretion in applying the law to the facts.' " Stukes , 490 S.W.3d at 574 (quoting Guzman , 955 S.W.2d at 87 ). By contrast, if the issue does not require such assessments, *40 the trial court is not in an appreciably better position than the reviewing court to make that determination, so review should be de novo. Moff , 154 S.W.3d at 601 ; Stukes , 490 S.W.3d at 574 ; see Guzman , 955 S.W.2d at 87. Accordingly, "[q]uestions of law-such as the sufficiency of an indictment or the constitutionality of a statute-are reviewed de novo because neither the trial court nor the reviewing court occupies an appreciably better position than the other to decide the issue," whereas "rulings that turn on evaluations of witness credibility and demeanor are reviewed for an abuse of discretion because the appellate court-deciding the issue from a cold record-is in an appreciably weaker position than the trial court." Holton , 487 S.W.3d at 608-09 ; Ribble , 2015 WL 1407761, at *1 ; Sample , 405 S.W.3d at 301 ; see Smith v. State , 309 S.W.3d 10, 13-14 (Tex. Crim. App. 2010) (concluding court of appeals erroneously applied abuse-of-discretion standard because sufficiency of charging instrument presents question of law so appellate court reviews trial judge's ruling on motion to quash charging instrument de novo); Lawrence v. State , 240 S.W.3d 912, 915 (Tex. Crim. App. 2007) (applying de novo review to decide constitutionality of statute challenged in motion to quash).
In this case, Donaldson raises a double jeopardy claim that did not require the trial court to evaluate the credibility or demeanor of witnesses. The trial court's decision was based on the indictments from each case, the record from the Hays County plea, the motion to quash, and the argument of counsel. Further, the facts are undisputed. When the facts are uncontested and the trial court's ruling does not turn on the credibility or demeanor of witnesses, a de novo review by the appellate court is appropriate. Ex parte Martin , 6 S.W.3d 524, 526 (Tex. Crim. App. 1999) ; Ex parte Ali , 368 S.W.3d 827, 831 (Tex. App.-Austin 2012, pet. ref'd) ; see also Ovalle v. State , No. 03-08-00334-CR, 2009 WL 1708826, at *5 (Tex. App.-Austin June 19, 2009, pet. ref'd) (mem. op., not designated for publication) ("Where there are no underlying questions of fact, double jeopardy is a question of law we review de novo."). Because the facts are uncontested and there were no witness credibility determinations or demeanor observations to be made, the trial court was in no better position than this Court is now with regard to determining whether Donaldson's prosecution in Comal County for fraudulent use or possession of identifying information subjected him to double jeopardy. See Moff , 154 S.W.3d at 601 (trial court's decision was based only on indictment, motion to quash, and argument of counsel, so trial court was in no better position than appellate court to decide issue); see, e.g , Wilson v. State , 248 S.W.3d 256, 257 (Tex. App.-Houston [1st Dist.] 2007, pet. dism'd) (applying de novo standard when reviewing trial court's ruling on pretrial application for writ of habeas corpus asserting double jeopardy violation because underlying facts were undisputed as appellant stipulated to facts at habeas hearing). In addition, resolution of Donaldson's double jeopardy claim here involves statutory construction of the Penal Code provision at issue, which is a question of law subject to de novo review. See Yazdchi v. State , 428 S.W.3d 831, 837 (Tex. Crim. App. 2014) ("Statutory construction is a question of law, and we review the lower court's interpretation of a statute de novo."). Accordingly, in this case, we determine that a de novo review is the appropriate standard of review to be employed when reviewing the trial court's decision to quash Count VI of the indictment.
Double Jeopardy
A defendant may not be twice put in jeopardy for the same offense. See *41 U.S. Const. amend. V ; Tex. Const. art. 1, § 14. The Fifth Amendment to the United States Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, Benton v. Maryland , 395 U.S. 784, 787, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), provides that "[n]o person shall be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amends. V, XIV. The Texas Constitution similarly provides, "No person, for the same offense, shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." Tex. Const. art. I, § 14. The double jeopardy provisions of the United States Constitution and the Texas Constitution provide substantially identical protections. Ex parte Mitchell , 977 S.W.2d 575, 580 (Tex. Crim. App. 1997) ; see State v. Blackshere , 344 S.W.3d 400, 406 n.8 (Tex. Crim. App. 2011).
The Fifth Amendment's Double Jeopardy Clause prohibits a second prosecution for the same offense after the accused has already been convicted or acquitted and forbids multiple punishments for the same offense in a single prosecution. U.S. Const. amend. V ; see Brown v. Ohio , 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) ; Stevenson v. State , 499 S.W.3d 842, 850 (Tex. Crim. App. 2016). "While different policy considerations are at issue in the two contexts (successive prosecutions versus multiple punishments), a threshold question in either case is whether the defendant is being punished or prosecuted for the 'same offense.' " State v. Perez , 947 S.W.2d 268, 270 (Tex. Crim. App. 1997) (citing United States v. Dixon , 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) ). The Court of Criminal Appeals has explained that there are two relevant inquiries in a double jeopardy analysis when considering whether the offenses at issue are "the same": legal sameness and factual sameness. Ex parte Castillo , 469 S.W.3d 165, 172 (Tex. Crim. App. 2015) ; see Aekins v. State , 447 S.W.3d 270, 283 (Tex. Crim. App. 2014) (Keller, P.J., concurring) ("For offenses to be the 'same' for double-jeopardy purposes, they must be the same both in 'law' and in 'fact.' "). "The legal-sameness inquiry depends on only the pleadings and statutory law-not the record-to ascertain whether two offenses are the same." Castillo , 469 S.W.3d at 172. If the offenses are legally the same, the next step is to determine whether the offenses are factually the same. Id. at 169 ; Ex parte Benson , 459 S.W.3d 67, 72 (Tex. Crim. App. 2015). "The factual-sameness inquiry requires a reviewing court to examine the entire record to determine if the same offenses have been alleged." Castillo , 469 S.W.3d at 172. "To prevail on a double jeopardy claim, the claimant must prove both legal sameness and factual sameness." Id. at 169.
When two distinct statutory provisions are at issue, we determine legal sameness by applying the same-elements test under Blockburger to determine whether "each provision requires proof of a fact which the other does not."[3]
*42 Id. at 168 ; Benson , 459 S.W.3d at 72 ; see Blockburger v. United States , 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."); see also Loving v. State , 401 S.W.3d 642, 645 (Tex. Crim. App. 2013) (courts employ Blockburger same-elements test under cognate-pleadings approach "when the charged conduct involves multiple offenses in different statutory provisions that are the result of a single course of conduct"). However, when the charged offenses at issue are codified in a single statutory provision (or are otherwise the same under an "elements" analysis), we conduct a units-of-prosecution analysis. Stevenson , 499 S.W.3d at 850 ; Benson , 459 S.W.3d at 71. A units analysis considers: (1) what the allowable unit of prosecution is, based on the statute's construction and ascertaining the gravamen of the offense, and (2) how many units have been shown by examining the record, which may include evidence presented at trial. Stevenson , 499 S.W.3d at 850 ; Castillo , 469 S.W.3d at 169 ; Benson , 459 S.W.3d 73-74.
The Legislature has broad power to establish and define crimes. Harris v. State , 359 S.W.3d 625, 629 (Tex. Crim. App. 2011) ; Ex parte Hawkins , 6 S.W.3d 554, 556 (Tex. Crim. App. 1999) ; see Sanabria v. United States , 437 U.S. 54, 69-70, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) ; Garfias v. State , 424 S.W.3d 54, 58 (Tex. Crim. App. 2014). Few, if any, limitations are imposed on this power by the Double Jeopardy Clause. Sanabria , 437 U.S. at 69, 98 S.Ct. 2170 ; Garfias , 424 S.W.3d at 58 ; Harris , 359 S.W.3d at 629 ; Hawkins , 6 S.W.3d at 556. The Legislature determines whether offenses are the same for double jeopardy purposes by prescribing the "allowable unit of prosecution," which is "a distinguishable discrete act that is a separate violation of the statute." Harris , 359 S.W.3d at 629 (quoting Hawkins , 6 S.W.3d at 556 ); see Sanabria , 437 U.S. at 69-70, 98 S.Ct. 2170 ("[O]nce [the Legislature] has defined a statutory offense by its prescription of the 'allowable unit of prosecution,' that prescription determines the scope of protection afforded by a prior conviction or acquittal."). The Legislature also decides whether a particular course of conduct involves one or more distinct offenses under a given statute. Harris , 359 S.W.3d at 629 ; Hawkins , 6 S.W.3d at 556 ; see Sanabria , 437 U.S. at 70, 98 S.Ct. 2170. Consequently, to determine whether a particular course of conduct involves one or more distinct offenses under a single statute, a court must ascertain the "allowable unit of prosecution" under the statute. Harris , 359 S.W.3d at 629 ; Jones v. State , 323 S.W.3d 885, 888 (Tex. Crim. App. 2010) ; Saenz v. State , 166 S.W.3d 270, 272 (Tex. Crim. App. 2005). This inquiry is purely one of statutory construction. Aekins , 447 S.W.3d at 285 ; Harris , 359 S.W.3d at 629 ; Jones , 323 S.W.3d at 888. Statutory construction is a question of law, which we review de novo. Cary v. State , 507 S.W.3d 750, 756 (Tex. Crim. App. 2016) ; Yazdchi , 428 S.W.3d at 837 ; Harris , 359 S.W.3d at 629.
In analyzing a statute, we "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation."
*43 Boykin v. State , 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) ; see Cary , 507 S.W.3d at 756 ; Johnson v. State , 423 S.W.3d 385, 394 (Tex. Crim. App. 2014) ; Harris , 359 S.W.3d at 629. To do so, we first look to the literal text of the statute, reading words and phrases in context and construing them according to the normal rules of grammar and common usage. Cary , 507 S.W.3d at 756 ; Yazdchi , 428 S.W.3d at 837 ; Harris , 359 S.W.3d at 629 ; see Tex. Gov't Code § 311.011(a). We presume that every word in a statute has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible. Cary , 507 S.W.3d at 756 ; Harris , 359 S.W.3d at 629. We give effect to the plain meaning of the statute's language unless the language is ambiguous or the plain meaning leads to absurd results that the Legislature could not have possibly intended. Cary , 507 S.W.3d at 756 ; Boykin , 818 S.W.2d at 785. If an interpretation of the language would lead to absurd results or the language is ambiguous, then we may review extra-textual resources to discern the collective intent of the legislators that voted to pass the bill. Cary , 507 S.W.3d at 756 ; Harris , 359 S.W.3d at 629 ; Boykin , 818 S.W.2d at 785. In addition, when construing a statute, we consider any prior judicial construction of the statute. Jones , 323 S.W.3d at 888 ; see Loving , 401 S.W.3d at 646 ("In making this determination [of what constitutes the allowable unit of prosecution], we rely on the plain language of the statute and our caselaw interpreting that plain language."); see, e.g. , Gonzales v. State , 304 S.W.3d 838, 849 (Tex. Crim. App. 2010) (relying on phrasing of statute and court's decision in Vick v. State , 991 S.W.2d 830 (Tex. Crim. App. 1999), to reach conclusion that Legislature intended for accused to be punished twice for various acts specified within separate and disjunctive phrases in same subsection of aggravated sexual assault statute).
In determining the allowable unit of prosecution, we first look at the language of the statute to see if the legislative intent regarding the unit of prosecution can be derived from the plain text. Absent an explicit statement from the Legislature indicating the allowable unit of prosecution-for example, "the allowable unit of prosecution shall be such-and-such"-the best indicator of legislative intent regarding the unit of prosecution is the gravamen or focus of the offense. Loving , 401 S.W.3d at 647 ; Harris , 359 S.W.3d at 630 ; Jones , 323 S.W.3d at 889 ; Hawkins , 6 S.W.3d at 559-60. Thus, when a statute does not expressly state the allowable unit of prosecution, we must construe the statute to identify the gravamen of the offense. Several tools can be utilized to determine the gravamen of a statutory provision. See Loving , 401 S.W.3d at 647.
"One aid in identifying the gravamen of the offense is grammar." Harris , 359 S.W.3d at 630 ; see Loving , 401 S.W.3d at 647. Several methods may be used in conducting a grammar analysis. One method is the "eighth grade grammar" approach, "a general rule of thumb" for determining legislative intent first suggested by Judge Cochran, which focuses on sentence syntax. See Jefferson v. State , 189 S.W.3d 305, 315-16 (Tex. Crim. App. 2006) (Cochran J., concurring); see also Leza v. State , 351 S.W.3d 344, 357 (Tex. Crim. App. 2011) ("[W]e have deemed [the 'eighth grade grammar' approach] generally useful and have since adopted it as a 'rule of thumb' for that purpose (to identify legislative intent).") (citing Stuhler v. State , 218 S.W.3d 706, 718 (Tex. Crim. App. 2007) ). Under the "eighth grade grammar" approach, the language that constitutes the gravamen of the offense consists of the subject, the main verb, *44 which defines the prohibited conduct, and the direct object if the main verb requires a direct object. Jones , 323 S.W.3d at 890-91 ; Huffman v. State , 267 S.W.3d 902, 906 (Tex. Crim. App. 2008) ; see Jefferson , 189 S.W.3d at 315-16 (Cochran J., concurring).
Another method of conducting a grammar analysis involves examining whether the statute refers to an item (usually the direct object) in the singular or plural. See Loving , 401 S.W.3d at 647 ; Harris , 359 S.W.3d at 630. " '[A] legislative reference to an item in the singular suggests that each instance of that item is a separate unit of prosecution.' " Harris , 359 S.W.3d at 630 (quoting Jones , 323 S.W.3d at 891 ); see, e.g. , Jones , 323 S.W.3d at 890-91 (noting singularity of direct object in statute proscribing making "a false or misleading written statement" to obtain property or credit, and concluding that each statement made constitutes separate unit of prosecution); Vineyard v. State , 958 S.W.2d 834, 837-38 (Tex. Crim. App. 1998) (concluding that Legislature's use of singular term "a film image" in statute prohibiting possession of child pornography indicated that possession of each film image of child pornography constitutes allowable unit of prosecution); Ex parte Rathmell , 717 S.W.2d 33, 35 (Tex. Crim. App. 1986) (construing involuntary manslaughter statute, which proscribed causing death of "an individual," and concluding that each death constituted separate allowable unit of prosecution); Iglehart v. State , 837 S.W.2d 122, 126-27 (Tex. Crim. App. 1992) (construing theft statute, which proscribed appropriating property without effective consent of "the owner," to allow separate prosecutions for appropriating various items of property from multiple owners in single transaction); Miles v. State , 259 S.W.3d 240, 249 (Tex. App.-Texarkana 2008, pet. ref'd) (concluding that plurality in phrase "one or more individuals" in deadly conduct statute "is some indication that the Legislature intended the 'allowable unit of prosecution' to be each discharge of the firearm" rather than each individual victim); cf. Fenoglio v. State , 252 S.W.3d 468, 478 (Tex. App.-Fort Worth 2008, pet. ref'd) (noting that in possession-oriented offenses, "the proscribed item is the allowable unit of prosecution").
Finally, a grammar analysis may utilize the "a/any test," which the Court of Criminal Appeals employed in construing Penal Code section 32.32. See Jones , 323 S.W.3d 892. The "a/any test" reasons that the use of "a" before the proscribed conduct means that the statute unambiguously proscribes each instance of the conduct while the use of "any" is ambiguous, and may or may not proscribe each instance of conduct, depending on the context of the entire statute. Id. at 891. While the court did not adopt the "a/any test" as a strict rule, it found the test to be a helpful tool in statutory analysis. Id. Using this test in Jones , the court determined that "[t]he presence of 'a' before the term 'materially false or misleading statement' in [Penal Code section] 32.32 [was] at least some indication that each 'materially false or misleading statement' constitutes a separate unit of prosecution." Id. ; but see, e.g. , Stevenson , 499 S.W.3d at 851-52 (disapproving appellate court's use of "a/any test" because statute at issue, violation of sexually violent predator civil-commitment order, is circumstance of conduct crime rather than nature of conduct crime as in Jones ).
Another aid or tool that can be utilized to determine the gravamen of a statutory provision is identifying the completed act required by the statute. Loving , 401 S.W.3d at 647 ; Harris , 359 S.W.3d at 630. " '[T]he unit of prosecution 'tends to be defined by the offense element that requires a completed act.' "
*45 Cooper v. State , 430 S.W.3d 426, 429 (Tex. Crim. App. 2014) (Keller, P.J., concurring) (quoting Jones , 323 S.W.3d at 890 ); see, e.g. , Ex parte Cavazos , 203 S.W.3d 333, 337 (Tex. Crim. App. 2006) (unlawful entry is gravamen of burglary because offense is complete once unlawful entry is made); Hawkins , 6 S.W.3d at 555 (assault is gravamen of robbery because assault must be complete, but theft only need be attempted); Cheney v. State , 755 S.W.2d 123, 192 (Tex. Crim. App. 1988) (making false statement is "forbidden conduct" of offense of making materially false statement to obtain property or credit because statute penalizes act of "making" materially false statement but does not require "actual acquisition" of property or credit: "[t]he offense is complete once the written, deceptive statement relevant to obtaining property or credit is made").
Further, an additional tool to determine the gravamen of a statutory provision is considering whether the statute criminalizes different types of conduct that each would cause a different type of harm to a victim. Loving , 401 S.W.3d at 647 ; Haight v. State , 137 S.W.3d 48, 50-51 (Tex. Crim. App. 2004). "[I]f each statutory provision protects a victim from a different type of harm, that is evidence that the Legislature intended for each commission of a prohibited act to be punished separately." Loving , 401 S.W.3d at 647.
In this case, the indictments from the two counties charged Donaldson with two violations of the same statute, Penal Code section 32.51(b)(1). Donaldson was convicted of fraudulent use or possession of identifying information in Count II of the Hays County indictment and now stands charged in Count VI of the Comal County indictment with that offense. As relevant to the indicted offenses here, Penal Code section 32.51 provides, "A person commits an offense if the person, with the intent to harm or defraud another, obtains, possesses, transfers, or uses an item of identifying information of another person without the other person's consent." Tex. Penal Code § 32.51(b)(1). The statute defines the term "identifying information" as
information that alone or in conjunction with other information identifies a person, including a person's:
(A) name and date of birth;
(B) unique biometric data, including the person's fingerprint, voice print, or retina or iris image;
(C) unique electronic identification number, address, routing code, or financial institution account number;
(D) telecommunication identifying information or access device; and
(E) social security number or other government-issued identification number.
Id. § 32.51(a)(1). The range of punishment for the offense is dictated by "the number of items" of identifying information obtained, possessed, transferred, or used. See id. § 32.51(c).
In looking at the plain language of the statute, we observe that the statute contains no explicit statement from the Legislature setting out the allowable unit of prosecution. Therefore, we will look to the gravamen or focus of the offense to identify the allowable unit of prosecution. See Harris , 359 S.W.3d at 629-30. To aid our determination, we conduct a grammar analysis, finding it to be the most appropriate tool to analyze this statute. First, analyzing the statute under the "eighth grade grammar" approach reveals that the subject is "a person," the main verb is "obtains, possesses, transfers, or uses," and the direct object is "an item of identifying information." The phrases "with intent to harm or defraud another" and *46 "without the other person's consent" are adverbial phrases of manner that modify the main verb ("obtains, possesses, transfers, or uses"). Thus, diagraming the statutory text according to the rules of grammar indicates that the statute penalizes the act of obtaining, possessing, transferring, or using an item of identifying information. Second, we note the Legislature's use of the singular in the direct object: "an item of identifying information." See Tex. Penal Code § 32.51(b)(1) (emphasis added). The singular suggests that each instance of that item-an item of identifying information-is a separate unit of prosecution. Similarly, the "a/any test" suggests that each "item of identifying information" constitutes a separate unit of prosecution. Thus, our grammatical analysis of this statute indicates that the unit of prosecution for this offense is each item of identifying information obtained, possessed, transferred, or used.
We continue our analysis by considering prior judicial construction of the statute. See Jones , 323 S.W.3d at 888. In construing Penal Code section 32.51 -specifically the ambiguous phrase "item of identifying information"-the Court of Criminal Appeals concluded that "the phrase 'item of identifying information' refers to any single piece of personal, identifying information enumerated in the definition of 'identifying information' that alone or in conjunction with other information identifies a person, as opposed to a thing that may contain a group of pieces of information identifying a person." Cortez v. State , 469 S.W.3d 593, 602 (Tex. Crim. App. 2015) ; see ids="6842697" index="133" url="https://cite.case.law/sw3d/469/593/#p602">id. (noting that legislative bill analysis "makes clear that the Legislature's intent was for the phrase 'item of identifying information' to refer to any single piece of personal, identifying information enumerated in the definition of 'identifying information' "); see also House Research Organization, Bill Analysis, Tex. C.S.H.B. 460, 80th Leg. R.S. (2007) ("[This bill] amends the current code to make it a crime to hold any single piece of personal, identifying information (i.e. a social security number) with the intent to harm or defraud a person."). We acknowledge that Cortez analyzed the statute in the context of a claim of jury charge error and not a double jeopardy claim. But, regardless of the specific legal issue, Cortez construed the meaning of section 32.51, and the double jeopardy claim before us turns upon the meaning of section 32.51. See Jones , 323 S.W.3d at 889 (observing that whether statutory construction occurs in context of analyzing double jeopardy claim or another context, "the issue is the same: the meaning of the statute").
Based on our statutory construction analysis of Penal Code section 32.51, we conclude that the gravamen of the offense of fraudulent use or possession of identifying information is the prohibited act of obtaining, possessing, transferring, or using an item of identifying information. We further conclude that the allowable unit of prosecution is each separate item of identifying information. See, e.g. , id. at 892-93 (concluding that each "materially false or misleading statement" constitutes separate unit of prosecution under Penal Code section 32.32, statute proscribing making false statement to obtain property or credit); Vineyard , 958 S.W.2d at 838 (concluding that each different image of child pornography is allowable unit of prosecution under Penal Code section 43.26, statute prohibiting possession of child pornography); Ex parte Gonzalez , 147 S.W.3d 474, 479 (Tex. App.-San Antonio 2004, pet. ref'd) (concluding that allowable unit of prosecution is each weapon carried under Penal Code section 46.02, statute defining offense of unlawful carrying of weapon). Accordingly, we hold that *47 the trial court erred in concluding that "each act of identity theft" is the allowable unit of prosecution under the statute.
Having determined what the allowable unit of prosecution is, we must next determine how many units have been shown in the record. See Stevenson , 499 S.W.3d at 850 ; Benson , 459 S.W.3d at 73. Count VI of the Comal County indictment alleges, in relevant part, that
on or about the 23rd day of December, 2013, ERIC WAYNE DONALDSON, hereinafter styled Defendant, with intent to harm or defraud another, did then and there obtain, possess, or use identifying information of Patricia Ross without the consent of Patricia Ross and the number of items of identifying information obtained, possessed, or used by the said ERIC WAYNE DONALDSON was 5 or more but less than 10, to-wit:
1. A Texas Driver's License bearing the government issued identification number [driver's license number], belonging to Patricia Ross,[4]
2. A Chase Debit MasterCard, bearing the financial institution account number ending in 7235, belonging to Patricia Ross,
3. A Wells Fargo Visa Card bearing the financial institution account number ending in 7779, belonging to Patricia Ross,
4. A Capital One MasterCard bearing the financial institution account ending in 1993, belonging to Patricia Ross,
5. A Capital One MasterCard bearing the financial institution account number ending in 4439, belonging to Patricia Ross,
6. An American Express card, bearing the financial institution account number ending in 7070, belonging to Patricia Ross,
7. A Beall's credit card, beaning the financial institution account number ending in 3824, belonging to Patricia Ross,
8. A Best Buy credit card, bearing the financial institution account number ending in 2418, belonging to Patricia Ross,
9. A Wal-Mart credit card, bearing the financial institution account number ending in 2401, belonging to Patricia Ross[.]
The units of prosecution alleged in this count include Ross's driver's license number, which constitutes an item of identifying information under subsection (a)(1)(E) ("other government-issued identification number") of the statute;[5] Ross's debit card number, which constitutes an item of identifying information under subsection (a)(1)(C) ("financial institution account number"); and seven different credit card numbers of Ross's, which each constitute an item of identifying information under subsection (a)(1)(C) ("financial institution account number"). See Tex. Penal Code § 32.51(a)(1)(C), (E).
Count II of the Hays County indictment, for which Donaldson was convicted of fraudulent use or possession of identifying information, alleged,
On or about the 23rd day of December, A.D. 2013, in Hays County, Texas, the *48 Defendant, Eric Wayne Donaldson, did then and there possess or use or obtain or transfer identifying information, to wit: name and either or [sic] date of birth or other government issued identification or telecommunication access device of another person, to wit: Patricia Ross, John Sevier, Paulita Pina, and Rilla Kitchen, without the consent of and with intent to defraud the above listed individuals[.]
We first observe that the units of prosecution alleged in this count are described by the statutory subsections of the definition of "identifying information" rather than descriptions of the actual identifying items or the property items containing the identifying information. Three statutory units of prosecution are alleged: "name and either or [sic] date of birth," an item of identifying information under subsection (a)(1)(A); "other government issued identification [number],"[6] an item of identifying information under subsection (a)(1)(E); and a "telecommunication access device," an item of identifying information under subsection (a)(1)(D). See id. § 32.51(a)(1)(A), (E), (D). The three items of identifying information were alleged to be the identifying information of four different individuals, one of whom was Patricia Ross.
Comparing the units of prosecution alleged in the two indictments, only one type of item of identifying information alleged in the Comal County count was also alleged in the Hays County count: a government-issued identification number. However, because the three items of identifying information in the Hays County count were alleged only by their statutory descriptions and were alleged to be the identifying information of four different individuals, only one of whom was Patricia Ross, the victim alleged in the Comal County offense, we cannot discern what precise items of identifying information form the basis of Donaldson's Hays County conviction, nor can we discern whose items of identifying information he was convicted of obtaining, possessing, transferring, or using. For example, was the item of identifying information that was the "name and date of birth" the name and birth date of Patricia Ross or one of the other listed individuals? Was the government-issued identification number issued to Ross or one of the other named individuals? Was Donaldson convicted of obtaining, possessing, transferring, or using Ross's telecommunication access device or that of someone else who was named in the count?
Even if we were to assume (as it appears the trial court did in its analysis) that each item of identifying information alleged in the Hays County count belonged to Patricia Ross, only one item of identifying information alleged in the Comal County count was possibly alleged in the Hays County count: Ross's driver's license number.[7] We say "possibly" because even if the *49 statutory item of "other government-issued identification number" in the Hays County count is an item of identifying information of Ross's (and not that of one of the three other named individuals), we do not know what the identification number is. While the "other government-issued identification number" in the Hays County count could be Ross's Texas driver's license number, it could very well be another government-issued identification number such as a passport number, military identification number, Medicaid identification number, taxpayer identification number, or if Ross is not a U.S. citizen, a permanent residency identification number or naturalization certificate identification number.
Because each item of identifying information constitutes a separate unit of prosecution, Ross's driver's license number is a different unit of prosecution than any other government-issued identification number. Thus, the units of prosecution are the same in both counts only if Ross's driver's license number was the "other government-issued identification number" for which Donaldson was convicted in Hays County. The record does not establish that. Consequently, even if we could conclude that as to the "government-issued identification number" unit of prosecution-the only unit of prosecution the counts have in common-the offenses are legally the same, we cannot conclude, on this record, that the offenses are factually the same. See Castillo , 469 S.W.3d at 169 ("After reviewing the record, if a court concludes that the offenses are based on the same unit of prosecution, then the offenses are factually the same for successive prosecution purposes."). In sum, without being able to determine what "other government-issued identification number" Donaldson was convicted of obtaining, possessing, transferring, or using in the Hays County count, it cannot be determined if the same units of prosecution are shown.[8]
In a successive prosecution double jeopardy challenge, the defendant has the burden of proving former jeopardy by a preponderance of the evidence, which includes the burden of showing that the offense for which he is threatened with prosecution is the same offense as the one for which he has already been convicted. See Ex parte Peterson , 117 S.W.3d 804, 818 (Tex. Crim. App. 2003), overruled on other grounds by Ex parte Lewis , 219 S.W.3d 335 (Tex. Crim. App. 2007) ; State v. Torres , 805 S.W.2d 418, 421 (Tex. Crim. App. 1991) ; Anderson v. State , 635 S.W.2d 722, 725 (Tex. Crim. App. 1982) ; Wockenfuss v. State , 521 S.W.2d 630, 631 (Tex. Crim. App. 1975) ; Ex parte Tomlinson , 886 S.W.2d 544, 547 (Tex. App.-Austin 1994, no pet.) ; see also Lewis v. State , No. 01-14-00557-CR, 2016 WL 316366, at *5 (Tex. App.-Houston [1st Dist.] Jan. 26, 2016, pet. ref'd) (mem. op., not designated for publication) ("In a double jeopardy challenge, the defendant bears the burden to provide a record that both establishes the commonality of the offenses and shows *50 that the State will be relying on the same instances of misconduct for which the accused was previously convicted or acquitted.") (citing Ex parte Infante , 151 S.W.3d 255, 262 (Tex. App.-Texarkana 2004, no pet.) ). The State contends that Donaldson has not met this burden. We agree. Without a record demonstrating that the same units of prosecution form the basis of both offenses, it cannot be concluded that the offenses are legally or factually the same. See Castillo , 469 S.W.3d at 169 ("To prevail, the claimant must prove legal sameness and factual sameness."). Accordingly, the trial court erred in concluding that the Comal County count charging fraudulent use or possession of identifying information subjected Donaldson to double jeopardy for the same offense.
CONCLUSION
The record before us does not demonstrate that the Comal County charge for fraudulent use or possession of identifying information is based on the same units of prosecution-that is, the same items of identifying information-as the Hays County conviction for fraudulent use or possession of identifying information. Therefore, the record does not demonstrate that the offenses are the same for double jeopardy purposes. Consequently, Donaldson has not met his burden of proving prior jeopardy. Accordingly, the trial erred in granting Donaldson's motion to quash. We reverse the trial court's order quashing Count VI of the indictment and remand this cause for further proceedings consistent with this opinion.

Effective September 1, 2015, subsection (e) of the theft statute was amended to change the value ladder and offense classification scheme for the offense. See Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 2, sec. 31.03, 1973 Tex. Gen. Laws 883, 929-30, amended by Act of May 31, 2015, 84th Leg., R.S., ch. 1251, § 10, sec. 31.01, 2015 Tex. Gen. Laws 4209, 4213-14 (current version at Tex. Penal Code § 31.03(e) ). However, because the value and classification changes in the statute are not implicated by the issues in this appeal, we cite to the current version of the statute for convenience.

In his motion to quash and the incorporated supporting brief, Donaldson asserted two double jeopardy claims. First, he maintained that the five theft counts, each of which alleged different items of stolen property from the purse Donaldson allegedly stole, violated double jeopardy because the State was charging him five times for the same theft offense (the theft of Ross's purse). Second, Donaldson argued that the prosecution for the fraudulent use or possession of identifying information was barred because he had already been convicted in Hays County for "the same offense" in cause number CR-14-0122. The instant appeal involves only Donaldson's second claim.

In Texas, the application of the Blockburger same-elements test is governed by the cognate-pleadings approach, which entails comparing the elements as pleaded in the charging instruments. See Ex parte Benson , 459 S.W.3d 67, 72 (Tex. Crim. App. 2015) ("[T]he offenses compared in an 'elements' analysis are derived solely from the pleadings and the relevant statutory provisions.") (citing Hall v. State , 225 S.W.3d 524, 532-33 (Tex. Crim. App. 2007) ) (internal citations omitted); Garfias v. State , 424 S.W.3d 54, 58 (Tex. Crim. App. 2014) (in conducting elements analysis under Blockburger , "courts must focus on the elements alleged in the charging instrument-not on the offense as defined in the Penal Code"); Zuliani v. State , 383 S.W.3d 289, 295 (Tex. App.-Austin 2012, pet. ref'd) ("In Texas, under the cognate-pleadings approach, we do not consider the statutory elements in the abstract, but rather, 'we focus on the elements alleged in the charging instrument' to determine whether the offenses as charged require proof of the same elements.") (quoting Bigon v. State , 252 S.W.3d 360, 370 (Tex. Crim. App. 2008) ).

For privacy and security reasons, we omit the actual driver's license number that appears in the indictment.

Because Ross's name and date of birth appear on her driver's license, the license contains an additional item of identifying information under subsection (a)(1)(A) ("name and date of birth"). See Tex. Penal Code § 32.51(a)(1)(A). However, that item of identifying information was not charged in this count.

For the sake of our analysis, we assume the omission of the word "number" was a typographical error, and the State intended to allege "other government-issued identification number" pursuant to subsection (a)(1)(E).

It appears that the trial court reasoned that because the four individuals named in the count were listed in the conjunctive, but the items of identifying information were listed disjunctively, Donaldson pled guilty to possessing the items of identifying information of each individual. But this reasoning still fails to pinpoint the precise item of identifying information obtained, possessed, transferred, or used. Further, following this reasoning, the number of items of identifying information for which Donaldson was convicted could range from between four (as Count II alleged) or up to twelve, depending on the combination of named individuals with the items of identifying information.

We observe that the other eight items of identifying information listed in Count VI of the Comal County indictment-Ross's debit card number and credit card numbers, see Tex. Penal Code § 32.51(a)(1)(C) ("financial institution account number")-are not alleged in Count II of the Hays County at all. The Hays County count did not allege any "financial institution account number" as an item of identifying information that Donaldson possessed, used, obtained, or transferred. Thus, these units of prosecution are neither legally or factually the same as those Donaldson was prosecuted for in Hays County. The trial court, however, did not address this disparateness because it incorrectly determined that the unit of prosecution for the offense was "a single act of identity theft" rather than each item of identifying information.